**Arthur HEAVENS, Appellant,**

v.

**LACLEDE GAS COMPANY,
Respondent.**

**No. 53957.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 7, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1988.

Application to Transfer Denied
Sept. 13, 1988.

William R. Hirsch, St. Louis, for appellant.

Paul B. Hunker, Jr., St. Louis, for respondent.

CRIST, Presiding Judge.

Plaintiff (employee) appeals from the dismissal of his action against Laclede Gas Company (employer) for personal injuries sustained while employee was operating a motor vehicle owned by employer. The court ruled that employee's personal injury action was precluded by the Workers' Compensation Law. We reverse and remand.

Employee was involved in an automobile accident with defendant, Henry Collier, while operating an automobile owned by employer. Employee brought a personal injury action against Collier and employer; however, employee's brief indicates Collier was reported deceased and dismissed from the action. In his amended petition, employee alleged Collier was uninsured at the time of the accident and employer was self-insured. Employee did not own a motor vehicle and had no personal insurance.

Pursuant to the Workers' Compensation Law an employer must compensate any employee for injuries sustained in an accident arising out of and in the course of employment. §§ 287.010–.810, RSMo 1986. Liability under the act releases the employer from all other liability in its role as employer. Here employee seeks to recover from employer in its role as insurer. *American Family Mut. Ins. Co. v. Missouri Power & Light Co.*, 517 S.W.2d 110, 115 (Mo.banc 1974) (Seiler, J., dissenting); *Sadler v. Home Savings of America*, 733 S.W.2d 856, 858 (Mo.App.1987) (when insurer assumed mortgage it stood in dual relationship to homeowner and its rights and responsibilities to homeowner in each role are separate). If employer had purchased insurance for the vehicle rather than self-insuring, the insurer would have paid under the uninsured motorist provision of that policy. *See e.g. Douthet v. State Farm Mut. Auto. Ins. Co.*, 546 S.W.2d 156 (Mo.banc 1977); *Linderer v. Royal Globe Ins. Co.*, 597 S.W.2d 656 (Mo.App.1980); *Steinhaeufel v. Reliance Ins. Co.*, 495 S.W.2d 463, 465 (Mo.App.1973) (employer's uninsured motorist provision was considered to provide the primary coverage for employee). Thus, the issue is not whether the action is barred by the Workers' Compensation Law, but whether an employer who self-insures is bound by the uninsured motorist requirement of § 379.203, RSMo 1986.

Employer, as a company with more than twenty-five motor vehicles, § 303.220.2, RSMo 1986, as well as $60,000 to post bond, § 303.240.1, RSMo 1986, was able to qualify as a self-insurer. "A certificate of self-insurance ... [must be] supplemented by an agreement by the self-insurer that ... he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer." 303.160.1(4), RSMo 1986. And, any liability policy that employer could have gotten would have had to include uninsured motorist coverage. § 379.203.1, RSMo 1986.

Since a self-insurer agrees to pay as if it had a vehicle liability policy, and any ve-

hicle liability policy would have included uninsured motorist protection, a self-insurer agrees to be liable to the drivers of its vehicles in uninsured motorist situations. Any other reading of the statutes would allow the circumvention of the mandatory uninsured motorist coverage. Coverage that has been broadly construed by the courts to:

> [contain] no allowance for limitation or restriction on the insurer's liability. Such coverage was designed to close the gap in the protection afforded the public under existing financial responsibility laws and, within fixed limits, to provide recompense to innocent persons injured by motorists who lack financial responsibility. As such it is entitled to be liberally construed to accomplish its highly remedial purpose. *Steinhaeufel*, 495 S.W. 2d at 466–67.

Based on this policy Missouri has chosen to allow the stacking of uninsured motorist protection and to allow coverage for intentional acts. *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538, 544–45 (Mo.banc 1976) ("when a statute requires that uninsured motorist coverage be included in any and every policy covering any motor vehicle, it would be an anomaly if ... [the amount of uninsured motorist coverage] depends solely on whether the company elects to write such insurance in consolidated or separate policies"); *Keeler v. Farmers & Merchants Ins. Co.*, 724 S.W.2d 307, 310 [4] (Mo.App.1987) (although the tortfeasor's liability insurance does not cover his intentional acts, the uninsured motorist statute "does not ... exclude from coverage damage caused by intentional acts of the [uninsured] tortfeasor").

While we have held it would be unconscionable to stack all the uninsured motorist coverage for a fleet of employer's vehicles, *Linderer*, 597 S.W.2d at 661 [1], it would be as equally unconscionable to allow an employer to totally avoid providing employees with uninsured motorist coverage by choosing to be self-insured. *See Christy v. City of Newark*, 102 N.J. 598, 510 A.2d 22 (1986) (holding, under facts very similar to ours, that the self-insured employer was required to provide uninsured motorist coverage, and that the existence of workers' compensation benefits did not prevent recovery under the uninsured motorist coverage).

Section 303.190.5, RSMo 1986, allows an employer to exclude an employee from coverage under an insurance policy. In *Truck Ins. Exch. v. Gillihan*, 659 S.W.2d 16 (Mo. App.1983), we held where there was an insurance policy with such an exclusion employee injured by the acts of another employee could not recover under the employer's policy as if his injuries had been caused by an uninsured motorist. Since *Gillihan*, Missouri's new Motor Vehicle Financial Responsibility Law has become effective, and it mandates that "No owner of a motor vehicle ... shall ... authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section." § 303.025, RSMo 1986 (effective 7–1–1987). An analysis of the policies behind mandatory insurance and mandatory uninsured motorist coverage might reveal a conflict between these mandatory coverages and § 303.190.5. This case, however, does not require us to decide that issue.

Judgment reversed and remanded.

DOWD and REINHARD, JJ., concur.